UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JALEN TORRIANO TURNER,

                    Plaintiff,                              Case No. 2:24-cv-98

v.                                                         Honorable Jane M. Beckering

SARAH SCHROEDER et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2).

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, Nebel, Sebaly, Schroderus, Tikkanen, Viitala, Scott, Green, Mohrman, Johnson, Nickelson, and Cavin. The Court will also deny, for failure to state a claim,

the following claims against remaining Defendants Vanacker and Anderson: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory and injunctive relief; (3) Plaintiff's First Amendment retaliation claim against Defendant Vanacker; (4) any purported First and Eighth Amendment claims regarding phone restrictions against Defendant Anderson; (5) Plaintiff's Eighth Amendment claims against Defendants Vanacker and Anderson premised upon verbal and sexual harassment; and (6) any Fourteenth Amendment due process and equal protection claims asserted against these Defendants. The following personal capacity claims for damages remain in the case: (1) Plaintiff's First Amendment claim against Defendant Anderson; and (2) Plaintiff's Eighth Amendment excessive force claim against Defendant Vanacker. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 3).

<u>**Discussion**</u>

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the following MBP employees in their official and personal capacities: Warden Sarah Schroeder; Captain Unknown Sebaly; Lieutenant Unknown Schroderus; Sergeants Unknown Nebel, Unknown Vanacker, and Unknown Tikkanen; Resident Unit Manager Unknown Vittala; Health Unit Manager Unknown Scott; Mental Health Psych Unknown Green; Hearing Officer Thomas O. Mohrman; and Correctional Officers Unknown Johnson, Unknown Anderson, Unknown Nickelson, and Unknown Cavin.

At some point in August 2023, Plaintiff was sent to a hospital regarding stomach issues, where he received a CAT scan. (Compl., ECF No. 1, PageID.14.) The hospital put in the report that Plaintiff was to immediately return if he had another similar episode. (*Id.*) Plaintiff "reported

the same episodes but was not sent to the hospital." (*Id.*) Plaintiff contends that Defendant Scott "did not go about Plaintiff's stomach issues the appropriate way to see why his stomach is in pain after he eat[s]." (*Id.*)

On December 13, 2023, Plaintiff was involved in a fight with two other inmates. (*Id.*, PageID.11.) Plaintiff contends that when staff responded to the fight, Defendant Vanacker jumped on Plaintiff's back and shouted, "Stop resisting," even though Plaintiff was not resisting. (*Id.*) Plaintiff believes that Defendant Vanacker did so to retaliate against Plaintiff for a grievance Plaintiff had written about his shoulder. (*Id.*) Plaintiff contends that video footage will show Defendant Vanacker twisting Plaintiff's shoulder and arm and "forcing it to pop out of socket." (*Id.*, PageID.12.)

Plaintiff was escorted to segregation. (*Id.*) He asserts that per MDOC policy, a medical staff member is supposed to see all inmates involved whenever an incident injury report is written. (*Id.*) Plaintiff contends that he was not seen by medical staff, despite his numerous health care kites and discussions with correctional officers. (*Id.*) Plaintiff sent several kites about his stomach and shoulder. (*Id.*) He indicated that his shoulder had been injured by Defendant Vanacker, and that he was experiencing indigestion, bloating, nausea, and a runny nose after eating. (*Id.*)

On December 12, 2023, the day prior to the fight, Defendants Tikkanen and Vanacker came to Plaintiff's cell. (*Id.*) Defendant Vanacker wrote Plaintiff a misconduct for wearing a towel around his neck. (*Id.*) Plaintiff claims that he was using the towel "to block out cold weather, which is a normal day to day thing that all prisoners do." (*Id.*) Defendant Tikkanen reviewed Plaintiff on the misconduct. (*Id.*) Defendants Tikkanen and Vanacker then offered Plaintiff $5,000.00 to stab another inmate. (*Id.*) Plaintiff refused. (*Id.*) Defendants Tikkanen and Vanacker then began to

3

threaten Plaintiff's family, making specific references to Plaintiff's aunt, who he describes as his "sole provider." (*Id.*, PageID.13.) These threats "scared Plaintiff into agreeing." (*Id.*)

The next morning, on December 13, 2023, Plaintiff "stabbed his friend." (*Id.*) Later that day, correctional officers came to Plaintiff's cell and told him that he was being placed on observation/suicide watch. (*Id.*, PageID.12.) Plaintiff asked why when he was not suicidal. (*Id.*) He was told that it was "per the warden." (*Id.*) Plaintiff wrote grievances "explaining all of this as well as [to] let the warden know." (*Id.*, PageID.13.) He did not receive responses to his grievances. (*Id.*)

Plaintiff contends that because of the stabbing and his grievances, staff "started retaliating against Plaintiff, harassing him." (*Id.*) Plaintiff "started to feel like his food was being poisoned." (*Id.*) He also started experiencing chest pains. (*Id.*)

On December 28, 2023, Plaintiff was denied his once-a-week phone call. (*Id.*) When Plaintiff asked for his phone call, Defendant Anderson told Plaintiff to "suck [his] d***." (*Id.*) Later that day, Defendant Anderson came to Plaintiff's cell and said, "[You are] not getting the phone, [you are] on [loss of privileges (LOP)], you f***ing n*****." (*Id.*) Plaintiff asked Defendant Nickelson for a grievance, and she responded, "Maybe you are a n*****." (*Id.*) Defendant Anderson came back around to Plaintiff's cell, said, "Suck my d***, I'll give you the phone," then walked off laughing. (*Id.*) As Defendant Anderson walked off, Plaintiff told him that he would be writing a grievance. (*Id.*) Defendant Anderson then wrote Plaintiff a sexual misconduct, in which Plaintiff claims Anderson lied about what happened. (*Id.*) Plaintiff also "stopped eating due to him feeling sick every time he did eat." (*Id.*)

On January 5, 2024, Plaintiff was escorted to Ward V, the observation ward for suicidal prisoners, even though Plaintiff was not suicidal. (*Id.*, PageID.14.) Plaintiff believes this cell

change was done to harass him, because he had no clothes, bedroll, or property. (*Id.*) The lights in Ward V were on 24 hours a day. (*Id.*) Plaintiff claims that it was "torture" and that he "is still suffering from emotional distress, because this was a form of false imprisonment." (*Id.*) Plaintiff "started back eating and was no longer considered to be on hunger strike." (*Id.*) He stayed on Ward V until January 22, 2024. (*Id.*)

Plaintiff contends that he wrote Defendant Schroeder numerous kites and told her numerous times that he did not want protection. (*Id.*) However, Defendant Schroeder "kept [Plaintiff] on suicide watch, claiming involuntary protection, when other prisoners . . . [were] on involuntary protection and [were] in a regular cell." (*Id.*) Plaintiff contends that Defendant Schroeder "denied his pleas to find a better solution and made [the] situation worse." (*Id.*)

On January 18, 2024, Defendant Tikkanen escorted Plaintiff to the shower to stab another inmate. (*Id.*) When he was being escorted back to his cell, Plaintiff snatched the chains from Defendant Tikkanen and said, "You gotta help me, don't do [anything] to my family." (*Id.*) Defendant Tikkanen backed out of Plaintiff's cell, called Plaintiff a "coward ass b****," and told Plaintiff that he would get him "cracked, meaning he will get someone to attack [Plaintiff] no matter where [he is] at." (*Id.*, PageID.15.) According to Plaintiff, he complied only because non-party Officer Burton told Plaintiff that he would be out of Ward V the next day, which was a lie. (*Id.*)

Plaintiff suggests that Defendant Johnson packed his property after Plaintiff's move to Ward V. (*Id.*) When Plaintiff received his property back, he found that he had pictures, including pictures of his deceased sister, and important paperwork missing. (*Id.*) Plaintiff's court documents, presentence investigation report, transcripts, and discovery packet were missing, preventing

Plaintiff from "even be[ing] able to work on his criminal conviction appeal." (*Id.*) Copies of Plaintiff's grievances were thrown away as well. (*Id.*)

Plaintiff claims that when Defendant Schroeder would make her weekly rounds in Ward V, Plaintiff would stop her and ask why he was still on suicide watch. (*Id.*) Defendant Schroeder laughed and told Plaintiff she did not know anything. (*Id.*) Plaintiff claims Defendant Schroeder left him in Ward V to retaliate against him for grievances he wrote. (*Id.*) Plaintiff alleges further that Defendant Viitala was responsible for moving Plaintiff from Ward V after Plaintiff "got off hunger strike," but that Defendant Viitala purposely did not move Plaintiff immediately in order to retaliate against him. (*Id.*)

At some point in January of 2024, Plaintiff received a Notice of Intent (NOI) that he would be placed on phone restriction. (*Id.*, PageID.16.) On January 20 or 21, 2024, Defendant Tikkanen told Plaintiff that he would not be talking to his family any time soon. (*Id.*) Defendant Tikkanen "tried to give Plaintiff 120 days [of] phone restriction." (*Id.*) Plaintiff claims this was "short lived, as when Plaintiff was transferred to another facility, the prison counselor found such illogical." (*Id.*) Plaintiff claims that while he was in segregation, Defendants Tikkanen and Vanacker harassed and retaliated against him by not bringing him the phone, even though Plaintiff was already on visiting restrictions and could not write his family on JPay. (*Id.*) Plaintiff claims these actions "would have blocked out all access of communication with his family." (*Id.*)

During Plaintiff's time in Ward V, Defendant Sebaly came to Plaintiff's cell to do a wellness check and to encourage Plaintiff to eat or drink so that he did not put his health in danger. (*Id.*) Defendant Sebaly came to Plaintiff's cell almost every day and would loudly shout, "Eat your f***ing food, [you are] making my job hard." (*Id.*) Defendant Schroderus came to Plaintiff's cell almost every day and said, "I'm just doing my job, I don't care if you die or not!" (*Id.*) Plaintiff

claims that Defendants Sebaly and Schroderus were supposed to encourage him to eat, but did not, which "caused more stress, depression[,] and headaches." (*Id.*)

Plaintiff wrote several kites to mental health prior to being in segregation. (*Id.*) Defendant Green told Plaintiff that he was "faking and he did not need mental health, because he [did not] ask for it [in] general population." (*Id.*) Defendant Green only came to Plaintiff's cell about three times, for no longer than 2 minutes. (*Id.*) Plaintiff claims that Defendant Green did that to say that he saw Plaintiff but was unable "to give a proper evaluation or understanding." (*Id.*) At one point, Defendant Green reviewed Plaintiff on a grievance Plaintiff had written. (*Id.*) Defendant Green said, "You don't need mental health, you're doing what everyone do[es]." (*Id.*) Plaintiff called Defendant Green a racist; Defendant Green responded, "and proud of it." (*Id.*)

Plaintiff goes on to allege that Defendants Johnson and Anderson refused to allow Plaintiff to use the phone, even though Plaintiff asked to use the phone "at least 10 times." (*Id.*) On one occasion, Defendant Johnson told Plaintiff to stop pestering him, or he would get Plaintiff stabbed again. (*Id.*) Plaintiff wrote a grievance, which "was later denied due to the date." (*Id.*) Plaintiff references that he had previously been stabbed on July 18, 2023, and that Defendant Johnson told Plaintiff that "he would get him stabbed." (*Id.*) Plaintiff suggests that Defendant Johnson's comment about having Plaintiff stabbed again was a reference to Defendant Johnson setting up the July 2023 stabbing. (*Id.*) Plaintiff avers further that Defendant Schroeder left Plaintiff in Ward V so that Plaintiff could not "process grievances in a timely manner." (*Id.*, PageID.18.)

Plaintiff then goes back to the sexual harassment misconduct written against him by Defendant Anderson. (*Id.*) Plaintiff alleges that Defendant Mohrman found him guilty of the misconduct. (*Id.*) During misconduct proceedings, Defendant Cavin allegedly lied and did not ask Plaintiff if he wanted to attend his misconduct hearing. (*Id.*) Plaintiff suggests that this was done

to retaliate against him and keep Plaintiff "on sanctions longer so Plaintiff [could not] contact his family." (*Id.*) Prior to the hearing, Plaintiff wrote a statement in which he said he was not guilty and "explained the steps [he] took in regards to sexual harassment and retaliation." (*Id.*) Defendant Cavin told Plaintiff that he would be transferred to "Ionia max facility," information that was supposed to be withheld from Plaintiff. (*Id.*, PageID.19.)

Plaintiff also appeared before Defendant Mohrman for a misconduct hearing for a fighting misconduct on December 18, 2023. (*Id.*) Plaintiff asked Defendant Mohrman if he could make an oral statement; Defendant Mohrman told Plaintiff no "as well as something else, [which Plaintiff is] unable to remember at the moment." (*Id.*) Plaintiff does remember that Defendant Mohrman made a disrespectful and inappropriate comment that was "not within his job description." (*Id.*) Plaintiff claims that the oral statement he wanted to make would have helped him demonstrate that he was not guilty of what Defendant Vanacker had mentioned in the misconduct. (*Id.*) Plaintiff also faults Defendant Nebel for lying in the misconduct and stating that Plaintiff threw a closed fist at inmate Silva; Plaintiff claims that he never threw a punch. (*Id.*, PageID.20.)

Plaintiff then goes on to reference an out of place misconduct that he received from Defendant Vanacker when he was stopped by Defendants Vanacker and Tikkanen after a call out. (*Id.*) Plaintiff admits that he was guilty, but avers that he was not treated equally. (*Id.*) Plaintiff asked why he could not get a class III misconduct, not a class II. (*Id.*) Defendant Tikkanen told Plaintiff to "take [his] best shot." (*Id.*)

Plaintiff then states that he is "currently having back issues and shoulder/arm pain problems." (*Id.*) He has reported his pain to health care staff at both MBP and the Ionia Correctional Facility. (*Id.*) Plaintiff contends that the issues have not been properly treated, and that he only received X-rays after leaving MBP. (*Id.*) Plaintiff avers that X-rays were not sufficient

and that he should have received an MRI. (*Id.*) Plaintiff alleges that his back problems have gotten

worse. (*Id.*) He states that Defendant Scott "did not take the necessary procedural oversight to

make sure Plaintiff's pain and injur[ies] did not worse[n]." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth

Amendment rights. (*Id.*, PageID.21–23.) The Court also construes Plaintiff's complaint to assert

constitutional claims premised upon the handling of his grievances and complaints. Plaintiff seeks

declaratory relief, injunctive relief in the form of adequate pain medication and reconstructive

surgery, and compensatory damages. (*Id.*, PageID.23–24.)

## II.    Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel to represent him in this matter. (ECF No. 3.)

Plaintiff argues that his placement in administrative segregation "greatly limit[s] his ability to

litigate." (*Id.*, PageID.115.) He asserts that counsel would be better suited to present evidence and

cross-examine witnesses. (*Id.*, PageID.116.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney.

*Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992

F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel,

in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard*

*v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.

In determining whether to exercise its discretion, the Court should consider the complexity of the

issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action

without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these

factors and determines that, at this stage of the case, the assistance of counsel does not appear

necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 3) will, therefore, be denied.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Official Capacity Claims

As noted above, Plaintiff has sued Defendants in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks damages, as well as declaratory and injunctive relief. (Compl., ECF No. 1, PageID.23–24.) Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, however, Plaintiff has been transferred from MBP to IBC. The Sixth Circuit has held that transfer to another prison facility moots claims for declaratory and injunctive relief. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying the rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D.

12

Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495– 96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. Plaintiff, therefore, cannot maintain any official capacity claims for declaratory and injunctive relief against Defendants. Accordingly, his official capacity claims will be dismissed in their entirety.[1]

### B. Personal Capacity Claims

#### 1. First Amendment Claims

##### a. Retaliation

Plaintiff contends that several Defendants retaliated against him, in violation of the First Amendment, in various ways.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

---

[1] To the extent Plaintiff seeks declaratory and injunctive relief against Defendants in their personal capacities, such claims will be dismissed as moot as well.

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff contends that he engaged in protected conduct by filing grievances, kites, and complaints, and by threatening to file a grievance against Defendant Anderson. Plaintiff, therefore, has adequately alleged protected conduct for purposes of his retaliation claims. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). The Court considers Plaintiff's allegations regarding the second and third elements for each implicated Defendant below.

### (i)    Defendants Vanacker, Schroeder, Viitala, Cavin, and Mohrman

Plaintiff asserts a belief that Defendant Vanacker used excessive force against him because of a "previous grievance [Plaintiff] wrote about [hi]s shoulder." (Compl., ECF No. 1, PageID.11.) He contends that Defendant Schroeder left him in the observation cell from December 13, 2023, until January 22, 2024, as "retaliation to grievances Plaintiff wrote." (*Id.*, PageID.15.) Plaintiff also alleges that Defendant Viitala retaliated against him by not moving him off of suicide watch

immediately after he ended his hunger strike. (*Id.*) Plaintiff suggests that Defendant Cavin retaliated by not asking Plaintiff if he wanted to attend his misconduct hearing. (*Id.*, PageID.18.) Finally, Plaintiff avers that Defendant Mohrman retaliated by not allowing Plaintiff to make a statement on the record during his misconduct hearing. (*Id.*, PageID.19.)

With respect to Defendants Vanacker, Schroeder, Viitala, Cavin, and Mohrman, Plaintiff merely alleges the ultimate fact of retaliation. He has not presented any facts whatsoever to support his suggestions that these individuals retaliated against him because of his grievances and complaints. Indeed, Plaintiff fails to allege any facts suggesting that any of these individuals were even aware of his various grievances. Accordingly, Plaintiff fails to state First Amendment retaliation claims against Defendants Vanacker, Schroeder, Viitala, Cavin, and Mohrman, and such claims will be dismissed. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### (ii)      Defendant Anderson

Plaintiff claims that on December 28, 2023, Defendant Anderson told Plaintiff, "suck my d***, I'll give you the phone." (Compl., ECF No. 1, PageID.13.) As Defendant Anderson walked off, Plaintiff told him that he would be submitting a grievance for sexual harassment. (*Id.*) Defendant Anderson then issued Plaintiff a sexual misconduct. (*Id.*) Taking these allegations as true, as the Court must at this stage, Plaintiff's First Amendment retaliation claim against Defendant Anderson may not be dismissed on initial review.

### b.      Access to the Courts

Plaintiff alleges that Defendant Johnson was responsible for packing his property when Plaintiff was moved to Ward V. (Compl., ECF No. 1, PageID.15.) Plaintiff avers that when he received his property back, he found that he was missing numerous documents, including court documents, his presentence investigation report, transcripts, and a discovery packet. (*Id.*) He

claims that he was not able to "work on his criminal conviction appeal." (*Id.*) Out of an abundance of caution, the Court has construed Plaintiff's complaint to assert a First Amendment access to the courts claim.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and show that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions

16

> to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Here, Plaintiff references pursuing a "criminal conviction appeal." (Compl., ECF No. 1, PageID.15.) Even assuming that Plaintiff has identified an underlying cause of action for which he may bring an access to the courts claim, Plaintiff fails to allege any facts showing that the loss of his documents resulted in any lost remedy in the underlying action. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004))). Because Plaintiff has failed to show any lost remedy, he has failed to state a claim for denial of access to the courts. Accordingly, any intended First Amendment access to the courts claim will be dismissed.

### c.    Restrictions on Phone Communication

In his complaint, Plaintiff contends that Defendants Johnson and Anderson refused Plaintiff his one allotted phone call per week, and that Defendant Tikkanen tried to place Plaintiff on a 120-day phone restriction. (Compl., ECF No. 1, PageID.16, 23.) Although Plaintiff couches these incidents as Eighth Amendment violations, the Court has construed Plaintiff to also be asserting violations of his First Amendment right to free speech and association.

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff's free speech rights are "uncontrovertedly limited by virtue of [Plaintiff's] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999) (en banc).

Prisoners have a right to "reasonable" access to the telephone. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). However, the restrictions about which Plaintiff complains did not completely deprive him of access to the outside world. *Cf. Almahdi v. Ashcroft*, 310 F. App'x 519 (3d Cir. 2009) (holding that restriction of prisoner's telephone access to one phone call per month did not violate the First Amendment); *Miles v. Scanlon*, No. 1:21-cv-74, 2021 WL 1809834, at *5 (W.D. Mich. May 6, 2021) (noting that inmates "do not have a constitutional right to a particular form of communication"); *Dallas v. Chippewa Corr. Facility*, No. 2:17-cv-198, 2018 WL 3829203, at *6 (W.D. Mich. Aug. 13, 2018) (dismissing prisoner's First Amendment claim premised upon a "refusal to allow him to use a phone every thirty days while on a break from sanctions"). Plaintiff's complaint fails to plausibly allege a violation of his First Amendment right

to free speech and association. Although Plaintiff suggests that he was on visitation restrictions and could not email his family on JPay (Compl., ECF No. 1, PageID.16), nowhere in his complaint does Plaintiff allege that he was unable to initiate communication with his family via mail. Instead, Plaintiff's allegations suggest that he would prefer to use the phone to communicate with his family, not that he or his family were prevented from using all forms of communication. Plaintiff's complaint, as pleaded, simply does not permit an inference that Plaintiff has been completely cut off from communication with the outside world. Any intended First Amendment free speech/association claims will, therefore, be dismissed.

### 2.     Eighth Amendment Claims

Plaintiff contends that many of the named Defendants violated his Eighth Amendment rights in various ways.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.   Excessive Force

Plaintiff contends that Defendant Vanacker used excessive force against him in violation of the Eighth Amendment. (Compl., ECF No. 1, PageID.22.) As set forth *supra*, Plaintiff alleges that on December 13, 2023, Defendant Vanacker was part of the group of officers who responded to a fight involving Plaintiff and two other inmates. (*Id.*, PageID.11.) Defendant Vanacker jumped

on Plaintiff's back, even though Plaintiff was not resisting, and twisted Plaintiff's arm and shoulder, causing it "to pop out of socket." (*Id.*, PageID.12.)

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); see also *Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298

21

(1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Taking Plaintiff's allegations as true, as the Court must at this stage, the Court concludes that Plaintiff's personal capacity Eighth Amendment excessive force claim for damages against Defendant Vanacker may not be dismissed on initial review.

### b.    Denial of Phone Calls

Plaintiff next contends that Defendants Johnson and Anderson violated his Eighth Amendment rights by refusing Plaintiff his one allotted phone call per week. (Compl., ECF No. 1, PageID.23.) Plaintiff also suggests that Defendant Tikkanen tried to place Plaintiff on a 120-day phone restriction. (*Id.*, PageID.16.)

Limitations on phone privileges, however, while unpleasant, do not amount to denials of basic human needs. *See Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 WL 804721, at *5 (W.D. Mich. Mar. 3, 2021) (collecting cases). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment

violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Hardin-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Plaintiff's allegations fall well short of meeting the objective prong of the Eighth Amendment standard. Accordingly, his Eighth Amendment claims against Defendants Johnson, Anderson, and Tikkanen premised upon limitations on phone privileges will be dismissed.

### c.    False Misconducts

Plaintiff next suggests that Defendant Nebel violated his Eighth Amendment rights by lying in a misconduct ticket. (Compl., ECF No. 1, PageID.21.) Plaintiff alleges that Defendant Nebel lied when she said that Plaintiff was fighting with inmate Silva. (*Id.*) Plaintiff also faults Defendant Anderson for issuing a false sexual misconduct. (*Id.*, PageID.23.) However, the filing of allegedly false misconduct tickets does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). Thus, these Eighth Amendment claims against Defendants Nebel and Anderson will be dismissed.

### d.    Threats and Harassment

Plaintiff next contends that several Defendants violated his Eighth Amendment rights by threatening him and verbally harassing him with racial and sexual comments. Specifically, Plaintiff avers that Defendants Tikkanen and Vanacker made threats toward Plaintiff's family if Plaintiff "did not carry out an order to stab another prisoner." (Compl., ECF No. 1, PageID.22.) Defendant Tikkanen also threatened to have Plaintiff "cracked, meaning he will get someone to attack [Plaintiff]." (*Id.*, PageID.15.) Plaintiff also suggests that Defendant Johnson threatened to have Plaintiff stabbed again. (*Id.*, PageID.17.) Next, Plaintiff faults Defendant Green for making racial comments towards him. (*Id.*, PageID.22.) Plaintiff also avers that Defendant Anderson sexually harassed him, and that Defendants Anderson and Nickelson used racial slurs towards him.

23

(*Id.*, PageID.13, 23.) Finally, Plaintiff contends that Defendant Sebely harassed him by yelling, "Eat your f***ing food, [you are] making my job hard," and that Defendant Schroderus told him, "I'm just doing my job, I don't care if you die or not!" (*Id.*, PageID.16.)

First, the threats made by Defendants Tikkanen, Vanacker, and Johnson, the comments by Defendants Sebely and Schroeder, as well as the racial comments and slurs made by Defendants Green, Nickelson, and Anderson, fall into the category of verbal harassment. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.").[2]

---

[2] In *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020), the Sixth Circuit concluded that "unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such threat constitute[d] conduct so objectively serious as to be 'antithetical to human dignity.'" *Id*. at 541 (quoting *Hope v. Pelzer*, 536 730, 745 (2002)). The conduct in the present case did not involve either a threat to Plaintiff's life or any demonstration of the means to carry it out, and it was not a repeated occurrence.

Defendant Anderson's comments, however, amount to a sexual demand. As set forth above, Plaintiff alleges that on two separate occasions, Defendant Anderson came to Plaintiff's cell and told Plaintiff to "suck [his] d***." (Compl, ECF No. 1, PageID.13.) "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment." *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019). However, the Sixth Circuit Court of Appeals has also "held that 'isolated, brief, and not severe' instances of sexual harassment do not give rise to Eighth Amendment violations." *Id*. (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)). The Court, therefore, must consider whether Defendant Anderson's alleged statements were sexual abuse or isolated, brief instances of sexual harassment.

Several courts considering the same type of allegations Plaintiff makes here have concluded that they do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Moore v. Calderon,* No. 1:20-cv-00397-DAD-BAM (PC), 2021 WL 1541296, at *2 (E.D. Cal. Apr. 20, 2021) (noting that officer's direction to female inmate to expose her breasts on one occasion was "highly inappropriate, deeply offensive and disrespectful, and would serve no legitimate penological objective" but did not give rise to an Eighth Amendment claim); *Patrick v. Hernandez*, No. 2:17-cv-1206 MCE CKD P, 2018 WL 5095130, at *2 (E.D. Cal. Oct. 17, 2018) (denying cognizable claim where defendants gawked at plaintiff in a manner that suggested they wanted him to expose himself and verbally encouraged plaintiff to expose himself); *Jones v. Fayette Cnty. Det. Ctr.*, No. 5:15-312-JMH, 2015 WL 6964276, at *2 (E.D. Ky. Nov. 10, 2015) (concluding that "Jones's allegation that Officer Johnson sexually harassed him by asking Jones to show him his penis on one occasion fails to state a claim of constitutional dimension"); *Murray v. Westbrooks*, No. 1:12-CV-133, 2013 WL 6668719, at *3 (E.D. Tenn. Dec. 18, 2013) ("Plaintiff claims Officer

Bontrager asked to see his "pinnies.") (Doc. 2). Courts have distinguished between a correctional officer's verbal sexual abuse of an inmate and actual sexual contact, finding that the former is not proscribed by the Eighth Amendment."); *Bonner v. Hall*, No. 3:11cv5/MCR/CJK, 2012 WL 5357275, at *3 (N.D. Fla. Oct. 1, 2012) (concluding that allegations that correctional officer asked to see inmate's penis, followed by the officer's licking his lips, does not indicate anything more than a de minimis injury and thus fails to state a constitutional claim), *report and recommendation adopted by* 2012 WL 5357188 (N.D. Fla. Oct. 30, 2012); *Spears v. Masters*, No. 2:07-cv-198, 2008 WL 111274, at *5 (W.D. Mich. Jan. 8, 2008) ("Plaintiff's claims that he was denied his tray on three occasions because of his refusal to show Defendant Masters his penis are also insufficient to constitute an Eighth Amendment violation.").

While Defendant Anderson's alleged harassment did not involve touching, lack of physical contact does not foreclose a determination that the conduct was sufficiently serious to satisfy the objective element of the Eighth Amendment standard. In *Rafferty*, a corrections officer repeatedly demanded that a female inmate expose her breasts and masturbate in his presence on multiple occasions. *Rafferty*, 915 F.3d at 1091. The officer argued that he had not violated the Eighth Amendment because he had only used words, he had not touched the inmate. *Id*. at 1096. The court disagreed with that characterization, stating:

> Furthermore, the abuse alleged to have occurred in this case did not merely consist of words. It also entailed forced sexual acts. The fact that [the officer] effectuated this sexual abuse by ordering [the inmate] to expose her breasts and masturbate, rather than by touching [the inmate] himself, does not change the fact that [the inmate] was repeatedly required to engage in sexual acts against her will.

*Id*. The court specifically determined that "[the officer]'s sexual abuse was *not* isolated [and] brief." *Id.* at 1095.

Here, Defendant Anderson's harassment was entirely verbal and did not involve touching. Although it occurred twice, both occurrences happened on the same day. The events Plaintiff

26

describes in his complaint, although entirely inappropriate, are the sort of isolated, brief, and not severe instances of sexual harassment that do not rise to the level of an Eighth Amendment violation.

Accordingly, for the foregoing reasons, Plaintiff's Eighth Amendment claims against Defendants Tikkanen, Vanacker, Johnson, Green, Anderson, Nickelson, Sebely, and Schroderus premised upon threats, harassment, racial slurs, and sexual harassment will be dismissed.

### e.        Placement in Segregation/Suicide Watch

Next, Plaintiff contends that several Defendants violated his Eighth Amendment rights by having him placed in administrative segregation or suicide watch. Plaintiff faults Defendants Schroeder and Viitala for keeping him on suicide watch. (Compl., ECF No. 1, PageID.21–22.) Plaintiff also suggests that Defendant Nebel's allegedly false statement in the fighting misconduct issued to Plaintiff resulted in his placement in long-term administrative segregation. (*Id.*, PageID.21.)

First, Plaintiff's placement in administrative segregation does not implicate the Eighth Amendment. Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Plaintiff does not allege any facts suggesting that he was denied basic human needs in administrative segregation. Accordingly, his Eighth Amendment claim against Defendant Nebel premised upon his placement in segregation will be dismissed.

Nor does Plaintiff's temporary placement on suicide watch implicate the Eighth Amendment. As an initial matter, although Plaintiff alleges that he was not suicidal, he does allege

27

that he went on a hunger strike. Because of the hunger strike, "it was certainly not objectively unreasonable to err on the side of caution and place [P]laintiff in the special needs unit for suicide watch." *Kinsey v. Cnty. of Lorain*, No. 1:17-cv-2412, 2019 WL 315055, at *8 (N.D. Ohio Jan. 23, 2019). This Court has previously held that placement on suicide watch "does not reach the threshold of objective seriousness sufficient to state a claim under the Eighth Amendment." *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *7 (W.D. Mich. Sept. 25, 2020). While Plaintiff alleges that he was denied clothing, a bedroll, and his property while on suicide watch, and while it is obvious that Plaintiff found these conditions to be uncomfortable, "they do not suggest that Plaintiff was subjected to the unnecessary and wanton infliction of pain, even at a *de minimis* level, that would support an Eighth Amendment violation." *See Reynolds v. Mattson*, No. 2:07-cv-59, 2008 WL 2704750, at *1 (W.D. Mich. July 9, 2008). Accordingly, Plaintiff's Eighth Amendment claims against Defendants Schroeder and Viitala premised upon his placement on suicide watch will be dismissed.

### f.      Inadequate Medical Care

Plaintiff next contends that Defendant Scott violated his Eighth Amendment rights by demonstrating deliberate indifference to Plaintiff's shoulder and stomach issues, and that Defendant Green was deliberately indifferent to Plaintiff's "mental health deterioration." (Compl, ECF No. 1, PageID.22.) Plaintiff also suggests that Defendant Schroeder was deliberately indifferent to "Plaintiff's lack of health care treatment." (*Id.*, PageID.21.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989

WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at *2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier*

*v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.*

*Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at \*2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### (i)   Defendant Green

Plaintiff faults Defendant Green for violating his Eighth Amendment rights by demonstrating deliberate indifference to Plaintiff's mental health needs. (Compl., ECF No. 1,

31

PageID.22.) Specifically, Plaintiff alleges that he wrote several kites to mental health prior to being in segregation. (*Id.*, PageID.16.) Defendant Green told Plaintiff that he was "faking and he did not need mental health, because he [did not] ask for it [in] general population." (*Id.*) Defendant Green only came to Plaintiff's cell about three times, for no longer than 2 minutes. (*Id.*) Plaintiff claims that Defendant Green did that to say that he saw Plaintiff but was unable "to give a proper evaluation or understanding." (*Id.*) At one point, Defendant Green reviewed Plaintiff on a grievance Plaintiff had written. (*Id.*) Defendant Green said, "You don't need mental health, you're doing what everyone do[es]." (*Id.*) Throughout his complaint, Plaintiff references experiencing stress, depression, and emotional distress.

The Court will presume that Plaintiff's depression, stress, and emotional distress rise to the level of a serious medical need. Plaintiff's claim that Defendant Green denied him necessary mental health care, however, is entirely conclusory. Plaintiff fails to set forth any specific factual allegations regarding the symptoms he experienced because of his stress, depression, and emotional distress. He also fails to allege any facts regarding what information he provided to Defendant Green about his mental health. At most, Plaintiff's complaint, as pleaded, sets forth only a disagreement with Defendant Green's decision that further mental health treatment was not necessary. Such a disagreement is insufficient to set forth an Eighth Amendment claim. *See Darrah*, 865 F.3d at 372; *Briggs*, 801 F. App'x at 959; *Mitchell*, 553 F. App'x at 604. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Green will be dismissed.

### (ii)     Defendant Scott

Next, Plaintiff argues that Defendant Scott violated his Eighth Amendment rights by demonstrating deliberate indifference to "Plaintiff's medical needs in regards to his shoulder and stomach and mental health." (Compl., ECF No. 1, PageID.22.) Specifically, Plaintiff alleges that

in August of 2023, he was sent to a hospital for a CAT scan for his stomach issues. (*Id.*, PageID.14.) After returning, Plaintiff continued to have issues with his stomach. (*Id.*) He contends that Defendant Scott "did not go about Plaintiff's stomach issues the appropriate way to see why his stomach is in pain after he eat[s]." (*Id.*)

Plaintiff also states that he is "currently having back issues and shoulder/arm pain problems." (*Id.*, PageID.20.) He has reported his pain to health care staff at both MBP and the Ionia Correctional Facility. (*Id.*) Plaintiff contends that the issues have not been properly treated, and that he only received X-rays after leaving MBP. (*Id.*) Plaintiff avers that X-rays were not sufficient and that he should have received an MRI. (*Id.*) Plaintiff alleges that his back problems have gotten worse. (*Id.*) He states that Defendant Scott "did not take the necessary procedural oversight to make sure Plaintiff's pain and injur[ies] did not worse[n]." (*Id.*)

Assuming for the purposes of this opinion that Plaintiff has sufficiently alleged serious medical needs, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Scott was deliberately indifferent to those needs. As an initial matter, even though Plaintiff suggests that Defendant Scott was deliberately indifferent to Plaintiff's mental health, Plaintiff's complaint is devoid of any facts suggesting that Defendant Scott was involved in the determination as to whether mental health services would be provided to Plaintiff. Moreover, Plaintiff's complaint is devoid of any facts suggesting that Defendant Scott was actively involved in providing treatment for Plaintiff's stomach, back, and shoulder issues. Plaintiff states in a conclusory manner that Defendant Scott did not take appropriate measures with respect to these issues, but does not set forth any facts regarding whether he even communicated these issues to Defendant Scott and whether Defendant Scott was his medical provider. Plaintiff's complaint, as pleaded, simply does not permit the Court to infer that Defendant Scott was deliberately indifferent

33

to Plaintiff's medical needs. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Scott will be dismissed.

### (iii)     Defendant Schroeder

Plaintiff vaguely alleges that Defendant Schroeder was "deliberately indifferent to Plaintiff's lack of health care treatment." (Compl., ECF No. 1, PageID.21.)

As an initial matter, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Moreover, the Court notes that administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. Ap''x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d

218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)).

Here, Plaintiff has failed to allege that Defendant Schroeder engaged in any active unconstitutional behavior with respect to the provision of health care to Plaintiff. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Schroeder will be dismissed.

### 3.      Fourteenth Amendment Claims

#### a.      Equal Protection

In his complaint, Plaintiff avers that Defendant Schroeder kept him on suicide watch, claiming involuntary protection, even though other prisoners "[were] on involuntary protection and [were] in a regular cell." (Compl., ECF No. 1, PageID.14.) Plaintiff also suggests that Defendant Vanacker did not treat him equally when he issued Plaintiff an out of place misconduct. (*Id.*, PageID.20.) Given these assertions, the Court construes Plaintiff's complaint to assert Fourteenth Amendment equal protection claims against Defendants Schroeder and Vanacker.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). With respect to Plaintiff's allegation that Defendant Vanacker did not treat him equally, Plaintiff wholly fails to allege any facts suggesting that others who were similarly situated were treated differently than him. Indeed, Plaintiff does not even allege how he believes he was treated unequally. With respect to Plaintiff's allegation that Defendant Schroder treated him differently than other inmates, Plaintiff identifies one inmate who was allegedly placed on involuntary protection but got to remain in a regular cell. Plaintiff's complaint, however, is devoid of facts suggesting that he was similarly situated to this inmate in all relevant respects.

Overall, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claims as class-of-one claims, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, Plaintiff's Fourteenth Amendment equal protection claims against Defendants Schroeder and Vanacker will be dismissed.

### b.    Due Process Claims

#### (i)    Loss of Property

In his complaint, Plaintiff mentions that he lost various items of property, including photos and documents, after Defendant Johnson packed up his property. To the extent that Plaintiff alleges that Defendant Johnson deprived him of property without due process of law, this claim is barred

by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Oct. 2, 2023); MDOC Policy Directive 04.02.110, ¶ E (eff. Nov. 1, 2017). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." MICH. COMP. LAWS § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would

not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

### (ii)        Misconduct Proceedings

Next, Plaintiff avers that Defendants Nebel, Vanacker, and Anderson issued false misconducts to Plaintiff. Plaintiff also faults Defendant Mohrman for not allowing him to give a statement on the record during misconduct proceedings. (Compl., ECF No. 1, PageID.22.) Finally, Plaintiff avers that Defendant Cavin did not allow Plaintiff to participate in his misconduct hearing. (*Id.*, PageID.23.) All of these allegations implicate Plaintiff's procedural due process rights under the Fourteenth Amendment.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect

38

the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

In his complaint, Plaintiff references receiving a misconduct for fighting, a sexual misconduct, and an out of place misconduct. Fighting and sexual misconduct tickets are class I misconducts, whereas an out of place misconduct is a class II misconduct. *See id.*, Attachs. A, B. With respect to the class II misconduct for being out of place, the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

In any event, with respect to all of the misconducts, Plaintiff does not allege any facts suggesting that the sanctions imposed affected the duration of his sentence. Nor can he. Plaintiff is serving sentences imposed in 2014 and 2018 for crimes committed in 2013 and 2018, respectively. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=925863 (last visited June 17, 2024). A prisoner like Plaintiff, who is serving indeterminate sentences for offenses committed after 2000, can

accumulate "disciplinary time" for a major misconduct conviction. *See* MICH. COMP. LAWS § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered any "significant and atypical deprivations." As discussed above, Plaintiff suggests that he was placed in administrative segregation because of the fighting misconduct. However, confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). Generally, periods of segregation lasting several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). Based upon the facts alleged by Plaintiff, it appears that the duration of Plaintiff's placement in segregation was for far less time than the several years or more at issue in *Selby*, *Harris*, and *Harden-Bey*.

Plaintiff has attached copies of the misconduct hearing reports to his complaint. Those exhibits indicate that Plaintiff received 21 days' loss of privileges for the sexual misconduct. (ECF No. 1-1, PageID.34.) He also received 21 days' loss of privileges for a fighting misconduct, although it is not clear whether that is the same fighting misconduct that Plaintiff contends that he received from Defendant Nebel. (*Id.*, PageID.39.) Plaintiff provides no information regarding any sanctions he received as a result of the out of place misconduct.

The loss of privileges sanctions involved the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022). Such a sanction does not affect the duration of Plaintiff's sentence or impose an atypical and significant hardship on Plaintiff. *See Ingram*, 94 F. App'x at 273; *Carter*, 69 F. App'x at 680.

Consequently, for the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims premised upon allegedly false misconducts and his misconduct proceedings will be dismissed.

### (iii)    Phone Restrictions

Plaintiff's complaint can also be construed to assert procedural due process claims premised upon his inability to use the phone, as discussed *supra*. Any phone restrictions, however, did not violate Plaintiff's due process rights. *See, e.g.*, *Anderson v. Barrows*, No. 2:19-cv-3631, 2019 WL 4451536, at *2 (S.D. Ohio Sept. 17, 2019) (dismissing plaintiff's due process claim premised upon "his inability to access a phone to call his family"); *Allen v. Alexsander*, No. 2:16-cv-245, 2017 WL 2952929, at *5 (W.D. Mich. July 11, 2017) (concluding that a 90-day phone restriction did not implicate a liberty interest); *Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL

41

1050497, at *2 (W.D. Mich. Apr. 19, 2006) (finding that a 6-month restriction on telephone privileges did not amount to an atypical or significant hardship that would trigger due process protections); *Adorno v. Semple*, No. 3:16-cv-325, 2016 WL 7469709, at *7 (D. Conn. Dec. 28, 2016) (concluding that "any Fourteenth Amendment claim based on an inability to make a telephone call is without merit"). Plaintiff's inability to use the phones as often as he would like simply does not reach the level of an atypical and significant hardship sufficient to trigger his due process rights. Any procedural due process claims premised upon phone restrictions will, therefore, be dismissed.

### (iv)     Substantive Due Process

Plaintiff's complaint can also be construed to assert substantive due process claims against Defendants. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Here, Plaintiff does not allege any facts showing the sort of egregious conduct that would support a substantive due process claim.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not

the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to Plaintiff's claims. Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### 4.    Failure to Act/Respond

In his complaint, Plaintiff suggests that Defendants Schroeder, Schroderus, Tikkanen, and Viitala failed to act to stop the alleged constitutional violations discussed *supra*.

As already set forth, however, government officials may not be held responsible under a theory of respondeat superior. *See Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691. Moreover, Defendants Schroeder, Schroderus, Tikkanen, and Viitala may not be held liable for simply failing to act. *See Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Shehee*, 199 F.3d at 300.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Schroeder, Schroderus, Tikkanen, and Viitala encouraged or condoned the conduct of any of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Accordingly, any purported claims against Defendants Schroeder, Schroderus, Tikkanen, and Viitala premised upon supervisory liability will be dismissed.

### 5.    Handling of Grievances and Complaints

The Court has construed Plaintiff's complaint to assert constitutional claims premised upon the handling of his grievances, complaints, and kites. However, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive Plaintiff of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to

44

petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants based on their handling of Plaintiff's grievances.

## **Conclusion**

The Court will grant Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) and deny his motion to appoint counsel (ECF No. 3). Furthermore, having conducted the review required by the PLRA, the Court will dismiss Plaintiff's complaint against Schroeder, Nebel, Sebaly, Schroderus, Tikkanen, Viitala, Scott, Green, Mohrman, Johnson, Nickelson, and Cavin for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). The Court will also dismiss the following claims against remaining Defendants Vanacker and Anderson: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory and injunctive relief; (3) Plaintiff's First Amendment retaliation claim against Defendant Vanacker; (4) any purported First and Eighth Amendment claims regarding phone restrictions against Defendant Anderson; (5) Plaintiff's Eighth Amendment claims against Defendants Vanacker and Anderson premised upon verbal and sexual harassment; and (6) any Fourteenth Amendment due process and equal protection claims asserted against these Defendants. The following personal capacity claims for damages remain in the case: (1) Plaintiff's First Amendment claim against Defendant Anderson; and (2) Plaintiff's Eighth Amendment excessive force claim against Defendant Vanacker.

An order consistent with this opinion will be entered.

Dated:    July 8, 2024          /s/ Jane M. Beckering
                                Jane M. Beckering
                                United States District Judge